752 S.E.2d 786

**In the Matter of Robert Lawrence PAPA, Respondent.**

**Appellate Case No. 2013–002230.**

**No. 27339.**

Supreme Court of South Carolina.

Submitted Oct. 25, 2013.

Decided Dec. 11, 2013.

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Harvey MacLure Watson, III of Ballard Watson Weissenstein, of West Columbia, for respondent.

PER CURIAM.

In this attorney disciplinary matter, the Office of Disciplinary Counsel (ODC) and respondent have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR). In the Agreement, respondent admits misconduct and consents to the imposition of a public reprimand or definite suspension not to exceed three (3) years with conditions stated hereafter. We accept the Agreement and suspend respondent from the practice of law in this state for three (3) years and impose certain conditions as specified hereafter. The facts, as set forth in the Agreement, are as follows.

### *Facts*

#### *Background*

Respondent represented Mrs. Doe's late husband, Mr. Doe, in various domestic matters involving prior marriages. In addition, respondent was hired by Mr. Doe to represent his trucking company in a bankruptcy matter in the early 1990s. Mrs. Doe was employed by the trucking company, including, at one point, serving as its president.

Mrs. Doe established other businesses separate from the trucking company. Respondent represented Mrs. Doe in the late 1990s in her own personal bankruptcy matter. Respondent subsequently represented Mrs. Doe in filing a partition action involving property she jointly owned with her sister.

Respondent represented Mrs. Doe, Mr. Doe, and their companies over the years by giving them general legal and business advice and by handling various bankruptcy and civil matters for them.

In 2002, Mr. Doe died. As a result, Mrs. Doe received proceeds from two life insurance policies. The first was paid to Mrs. Doe without dispute. Respondent placed these funds in his trust account in 2002 as directed by Mrs. Doe.

The proceeds of the second life insurance policy were subject to a claim by Mrs. Doe's adult stepson. Respondent represented Mrs. Doe in the civil action that arose as a result of that claim. The matter was settled in December 2003 and the civil action was dismissed in February 2004. Mrs. Doe received a portion of the proceeds and another portion was paid to the stepson.

Throughout 2003, 2004, and 2005, respondent collected legal fees from funds held in trust on behalf of Mrs. Doe a variety of legal matters.

## Matter I

Upon receipt of the life insurance proceeds, Mrs. Doe asked respondent to manage her money to protect her from her own inability to handle money. Respondent agreed, based on his long-standing relationship with Mr. Doe and his belief that Mr. Doe would have wanted him to assist Mrs. Doe after his death.

Respondent took possession of more than one million dollars ($1,000,000.00) from or on behalf of Mrs. Doe for this purpose between 2002 and 2004. Respondent did not put the terms of his agreement with Mrs. Doe regarding management of her money in writing.

In 2002 and 2003, respondent managed Mrs. Doe's funds using his law firm trust account. He used Mrs. Doe's funds held in trust to pay some of Mrs. Doe's living expenses and provide her with spending money as she requested it. There was no written agreement between respondent and Mrs. Doe with regard to the management and investment of Mrs. Doe's funds.

On January 14, 2004, respondent formed Kilauea Properties, LLC, a single member LLC, naming himself as the sole member. Respondent created this business entity so that Mrs. Doe would be prevented from having the right to participate in decisions and activities of the business. Mrs. Doe had no ownership interest of record in Kilauea Properties, LLC.

In February 2004, respondent opened a bank account in the name of Kilauea Properties, LLC. He moved some of Mrs. Doe's money from his trust account to the Kilauea Properties, LLC, account. Respondent had sole signatory authority on that account and Mrs. Doe had no access to it other than to request checks from respondent. From that account, respondent purchased various real estate properties as investments which generated income rental and resale. The properties were titled in the name Kilauea Properties, LLC.

Respondent contends he met regularly with Mrs. Doe, a licensed real estate agent, to discuss the status of the properties, including how they were titled, and future acquisitions. However, respondent has no records of these meetings.

In connection with several of the property transactions involving Kilauea Properties, LLC, respondent performed legal work on behalf of the company. On at least two occasions, respondent collected fees for those legal services from Mrs. Doe's funds in the Kilauea Properties, LLC, bank account.

Respondent received no compensation for his management of Mrs. Doe's funds. However, Kilauea Properties, LLC, was included in respondent's tax returns since it was titled in his name. Kilauea Properties, LLC, showed losses from which respondent personally benefitted from a tax standpoint.

Mrs. Doe began to question respondent's management of the funds and investment decisions. On January 1, 2005, respondent prepared and signed an "irrevocable option" which purported to allow Mrs. Doe to exercise the option to acquire a 49% interest in Kilauea Properties, LLC, at any time. Respondent contends he believed the decision to retain a controlling interest was necessary to allow him to ensure that the LLC was properly wound down in the event respondent elected to do so. On August 1, 2007, respondent prepared and signed an "Agreement to Execute Instruments of Conveyance" which set forth in writing, for the first time, terms of the trust arrangement, respondent's duties to provide income,

documents, and information to Mrs. Doe, and his duty to convey all properties held by Kilauea Properties, LLC, to Mrs. Doe at her request.

Mrs. Doe filed a lawsuit against respondent. The civil action was settled in mediation in which respondent agreed to deed the properties held by Kilauea Properties, LLC, to Mrs. Doe. The lawsuit has been concluded.

## Matter II

Respondent and a realtor formed Camp Center, LLC, for the purpose of real estate investment. In February 2004, Mrs. Doe agreed to participate in the Camp Center investment. With her consent, respondent wrote a check payable to himself for $94,500.00 and a check payable to the realtor for $55,500.00 from Mrs. Doe's funds held in his trust account. These checks were written to allow Mrs. Doe to acquire an interest in Camp Center, LLC.

Respondent used the funds to purchase various properties as part of a shopping center. Mrs. Doe was aware of the transactions undertaken by Camp Center, LLC, and personally viewed the property that was acquired. Respondent believes that Mrs. Doe received approximately $200,000.00 within a year as a return on her investment, but he does not have documentation supporting this assertion.

Respondent believes that there was written documentation of the terms of these transactions provided to Mrs. Doe, but he does not have a copy. He does not know if he disclosed the conflict of interest related to these transactions to Mrs. Doe or if he obtained her informed consent.

## Matter III

Respondent deeded a parcel of real estate he personally owned to Kilauea Properties, LLC. In exchange, he paid himself an initial payment of $25,000 and several subsequent payments of various amounts from the Kilauea Properties, LLC, bank account. No written documentation of the terms of this transaction was provided to Mrs. Doe. Respondent cannot locate records documenting the dates or amounts of the subsequent payments. Respondent neither disclosed the conflict of interest related to this transaction to Mrs. Doe nor did he obtain her informed consent in writing. This property was commercial in nature and was subsequently leased for $800.00

 

per month, yielding $9,600.00 per year in income that was deposited into the Kilauea Properties, LLC, account.

## Matter IV

From July 2003 until November 2003, respondent represented Mrs. Doe in connection with a parcel of real estate she jointly owned with her sister-in-law. Respondent represented Mrs. Doe in the partition of that property. After the conclusion of the partition action, respondent used funds from the Kilauea Properties, LLC, bank account to pay off Mrs. Doe's mortgage obligation on that property. The property was then deeded from Mrs. Doe to Kilauea Properties, LLC, a company solely owned by respondent. No written documentation of the terms of this transaction was provided to Mrs. Doe. Respondent neither disclosed the conflict of interest related to this transaction to Mrs. Doe nor did he obtain her informed consent.

## Matter V

Respondent and another business partner owned Caribbean Properties, LLC, a real estate renovation company. Respondent loaned funds from the Kilauea Properties, LLC, account to Caribbean Properties, LLC. Respondent contends the purpose of these loans was to make use of Mrs. Doe's funds to generate revenue on her behalf, even if available funds were insufficient to purchase the property outright. These funds were used for renovations on several properties owned by Caribbean Properties, LLC. No written documentation of the terms of these transactions was provided to Mrs. Doe. Respondent neither disclosed the conflict of interest related to this transaction to Mrs. Doe nor did he obtain her informed consent.

## Matter VI

Respondent and an acquaintance formed Wadmalaw Properties, LLC, in which each owned a fifty percent interest. Wadmalaw Properties, LLC, was formed to purchase a parcel of commercial real estate for development using approximately $31,000.00 from the Kilauea Properties, LLC, account. Respondent also used funds from the Kilauea Properties, LLC, account to pay taxes and related fees as well as repairs and renovations for the property purchased by Wadmalaw Properties, LLC. No written documentation of the terms of

these transactions was provided to Mrs. Doe. Respondent neither disclosed the conflict of interest related to these transactions to Mrs. Doe nor obtained her informed consent.

## VII

Respondent did not maintain accurate records of transactions involving Mrs. Doe's funds. Further, he failed to comply with the recordkeeping and reconciliation requirements of Rule 417, SCACR. As a result, respondent was unable to produce an accounting to Mrs. Doe or her counsel, in spite of repeated demands. Respondent has subsequently attempted to create an accurate accounting of transactions involving Mrs. Doe's funds, but lack of adequate recordkeeping has rendered this reconstructed accounting incomplete.

## *Law*

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.7 (where concurrent conflict of interest, lawyer may represent client if lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to client and client gives informed consent, confirmed in writing); Rule 1.8 (lawyer shall not enter into business transaction with client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to client unless: (1) transaction and terms on which lawyer acquires the interest are fair and reasonable to client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by client; (2) client is advised in writing of the desirability of seeking and is given reasonable opportunity to seek advice of independent legal counsel on the transaction; and (3) client gives informed consent, in a writing signed by client, to the essential terms of the transaction and lawyer's role in transaction, including whether lawyer is representing client in the transaction); Rule 1.15(a) (lawyer shall hold property of clients or third persons in lawyer's possession in connection with representation separate from lawyer's own property). Respondent further admits he has violated Rule 417, SCACR.

Respondent also admits he has violated the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (it shall be ground for discipline for lawyer to

violate Rules of Professional Conduct, Rule 407, SCACR, or any other rules of this jurisdiction regarding professional conduct of lawyers) and Rule 7(a)(5) (it shall be ground for discipline for lawyer to engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law).

### *Conclusion*

We accept the Agreement for Discipline by Consent and suspend respondent from the practice of law for three (3) years and impose the following conditions: 1) within thirty (30) days of the date of this opinion, respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct (the Commission) and 2) within nine (9) months of the date of this opinion, respondent shall complete the Legal Ethics and Practice Program Ethics School and Trust Account School and provide proof of completion to the Commission. Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.